Next case on the count is United States v. Hunt. All right, Mr. Lee, I see you've reserved two minutes for rebuttal, and you can begin whenever you're ready. Good morning. Your Honors, may it please the Court. Yan-Chan Lee, Federal Defenders of New York, for Appellant Brendan Hunt. The First Amendment entitled Mr. Hunt to make and post his video on Bitchute, however disgusting and scary it was, looked at for its form, content, and context, what was said, how it was said, where it was said. The video is classic inciting speech, as defined in Brandenburg. It is advocacy of use of force or law of violation. The jury was given the question of whether or not this was a true threat. And let's assume, don't argue the facts in this case, but if it was a true threat, an absolute true threat, I'm going to kill you as soon as I can, I've got a gun, I'm coming after you, unless you do X. That's a true threat. And you have a true threat, and it's charged. You don't even get to the question of the First Amendment. You don't get to the question of whether it's a threat or not. That's right. You agree with that? Yeah, I agree with that. Well, isn't that exactly what we have at issue here, where the jury finds, unless you disagree that the evidence was, you say the evidence was insufficient for the jury, but the jury finds a true threat in one of these incidents. Doesn't that end the inquiry in terms of that? You know, the First Amendment is not implicated. It's only if they don't, and then you look at whether it's incitement or not incitement, that you get into a constitutional fact list. So, yes, Your Honor, what this Court has said repeatedly is that in general, and this is true, in almost all cases, as in Your Honor's hypothetical, it's clearly a threat, in the sense that it's a communicated expression. The expression is communicated to the target. Your argument is really with the jury verdict, Your Honor. Your Honor, I respectfully disagree. So this is the point that Judge Pooler made here in dissent in Turner, is that if you look at the definition of true threat that's given to the jury, right, it's a serious expression of an intent to inflict bodily injury. Well, inciting speech could also be serious in exactly the same way. And you can also have both at the same time. Exactly. That's absolutely true. There was undoubtedly some incitement in your client's video, but the jury was asked, you know, was there also a threat? Respectfully, Your Honor, I disagree with that. The jury was never asked to determine whether the speech in question was a threat. Oh, yes, they were. It was only asked. Hold on. Let me read the jury instruction. On 1410, they said you have to determine whether an ordinary reasonable recipient who is familiar with the context of the statement would interpret it as a threat of bodily injury. They were further told the First Amendment protects mere advocacy of the use of force or violence. They were further told that it not only had to be serious, it had to be imminent. So they were given the instructions. I don't think you quarrel with the instruction. I don't think you objected to that particular instruction. So a couple of points about that, Your Honor. Let me just finish. The jury was given the instruction of the delineation between something that's a true threat and therefore criminal and something that is not. They found that this was a true threat. And the First Amendment is perfectly protected by the sufficiency of the evidence analysis. If no rational jury could find that this was a true threat, then obviously it would be reversed and the First Amendment would prevail. So, Your Honor, yes, I don't quarrel with the fact that that's in the jury charge. But the question of whether— So why would we independently examine it then? If a rational jury could find it was a true threat and they were properly instructed, why would we take it upon ourselves to independently examine that in this context? The government cites numerous threat cases where we have looked at the sufficiency of the evidence, right, before and after Cutler. I think it's five separate published opinions of threat cases where we have simply looked at the sufficiency of the evidence. I understand, Your Honor. Why issue something different here? Our view is that there are all sorts of statements, right? There's all sorts of statements that cause apprehension in the listener or that if you take it seriously could be taken as the speaker's intent to inflict injury. But that doesn't make it a threat. Inciting speech can have exactly the same kind of effect. There was more evidence here. I mean, if you're going to look at the sufficiency of the evidence, we have to show up with our guns. We have to show up with our guns. We need to slaughter these expletives. I will go there myself and shoot them. Yes, Your Honor. Suppose that's a basis for the jury to conclude that it's a true threat. End of matter. Your Honor, so first of all, of course, we can't just rely on grammar, right? Certainly it's not dispositive. It's one of the points you're right. We can see that that may lead to a finding. However, the Supreme Court itself has said it in Claiborne that the use of the first person, right? In Claiborne, the speaker said, you know, if you cross those picket lines, we're going to break your necks, okay? And what the Supreme Court said about that is, well, that doesn't turn that into a threat. That's sort of an emotion. It's a rhetorical device used to appeal to the speaker's audience for unity in action in a common cause. Respectfully, Your Honor, the critical pronoun to look at here is actually not the first person pronoun. It's actually the second person pronoun. The inciter speaks to those whom he's trying to incite. The threatener speaks to those who's trying to threaten. So there's no question for us but that the jury was properly instructed. And they also, they parsed this case. You won on, I think it was three or four. Three out of the four. Three out of the four counts. What is it that you're specifically asking us to do? Are you asking us to second guess the jury's verdict? No, Your Honor. Review this tape and analyze it for ourselves? No, Your Honor. This Court and the Supreme Court has repeatedly said that appellate courts have an obligation to independently review the record where core facts implicate the First Amendment. We've all looked at the video. Yes, Your Honor. What we're asking you to do, just to go back to the initial question, why isn't this resolved by the jury? And this is the point that Judge Pooler makes in her dissent. And again, it's a dissent, but the analytical framework is correct. Okay? Is that before we reach the question of whether it's a true threat, meaning it's a serious or credible or believable threat, you have to first determine that it's a threat in the first place. And that respect to that case, I read it this morning, said no rational jury could find in that case that it was a true threat. And that we don't have that situation here. That's what she concluded, that it needed to be a threat, and no rational jury could find that. Your Honor, so I'm trying to see if I can find an analogy in an error law that I'm familiar with, right? So in 924C cases, the crime is using a gun during a crime of violence. And unfortunately, I'm sure we're all familiar with this now. The jury has to find that the defendant used the gun during a crime of violence. But to determine whether a crime qualifies as a crime of violence, that's the antecedent question that a court answers. And then once the court determines that— That's a legal question. The question of whether something is a threat is a fact-specific. When you look at the context, it's under a reasonable person standard, which is perfectly—which is, we think, juries should decide those things. Your Honor, respectfully, in most cases, in 99% of cases, that's true. There's no dispute that a threat has occurred in 99% of threat prosecutions because it's a communication in which the speaker is addressing the person that he's trying to instill fear in. And so this question never comes up. But in this scenario, which is the Turner scenario, in which, at least on its face, the speaker is not trying to instill fear in the listener, but actually addressing third parties that he's trying to advocate to engage in violent action, there is at least—the issue arises, the sorting question—you have to resolve this question before just asking the jury the true threat question. The true threat question is not really a question about whether it's a threat, but whether it's true, meaning whether it's serious or credible. Which case has overturned a jury's verdict that was sufficient on the evidence on a threat case, concluding they independently conclude under a sorting theory, whatever you want to call it, that this should not happen? Well, so the Fourth Circuit in White and the Ninth Circuit in Bagdasarian, cited in our briefs. White is close to here, in which there was a whole bunch of things. He got convicted of several of them, but the appellate court vacated one of them. And one of them was—it was two blog posts in which the defendant was calling for— calling on his fellow white supremacists to kill a civil rights lawyer. Okay? And the Fourth Circuit said, you know, when you're not, you know, speaking directly and trying to instill fear in the listener, you're not threatening. It's certainly unpleasant speech. Okay? I mean, we're not going to, you know, stand here and pretend otherwise. But they didn't do that on a sufficiency analysis? It is not a sufficiency analysis, Your Honor. I mean, let me take that back. The issue of sufficiency and sort of a First Amendment motion dismissed kind of merge at this point. Our view is that under no reading of the facts here can you construe this as a threat as opposed to inciting speech. So you're urging us, for you to prevail, you're urging us to find, and we have to find, that no rational jury looking at that video could extrapolate—extract threats from it. Your Honor, again, I think it's—we're sort of in a different category. This is a legal question. The question—a jury is not capable of determining the legal question of a particular form of speech is a threat, which is readily punishable so long as it's true, or whether it's incitement, which is core First Amendment activity that's protected unless it seeks imminent violence that's likely to occur. This is a legal question for courts to answer. It's not a fact determination. The trueness, once you've figured out that—or once you've determined that it's a threat and you've put that in that category, then of course it's a jury question to determine whether a reasonable person could construe it as a serious expression. All right. Thank you, Mr. Lee. You have your two minutes for rebuttal from Mr. Richardson. Good morning. May it please the Court. I represent the government below. Judge Parker, you started—or you asked my colleague to explain what he wanted here, and he said that what he wanted this Court to do is to decide whether or not the speech was incitement before deciding whether it qualified as a threat. And I think on that point, the Turner decision precludes that analysis. The Turner decision—in Turner, this Court held that Turner's conduct was reasonably found by the jury to constitute a threat unprotected by the First Amendment. It need not also constitute incitement to imminent lawless action to be properly prescribed. The sorting theory that the defendant has proposed in this case is not supported by the evidence, and it's not supported by the cases in which he cites, where other courts, like Baghdassarian in the Ninth Circuit and the Fourth Circuit, determined that in those cases, the statements that were made were not themselves threats at all and were not sufficient to be threats. So the White case that he cited, was that a sufficiency case or not? I believe it was a sufficiency case, Your Honor. And I think, as Mr. Lee—sorry, as my colleague stated, I think at this point, this is really where sufficiency collapses into the First Amendment analysis. The question here for this Court, because the defendant was charged with making a threat,  and as this jury saw extensive evidence, not only of the threat itself, but also contextual information, and then heard the defendant himself testify about his own threat and his intent in making the threat, the jury was uniquely qualified to make that judgment that in this case, whatever else the speech might be, it constituted a true threat. And so I think, as Judge Bianco was noting earlier, this Court has consistently used sufficiency review and found it sufficient to protect the constitutional rights of the defendants in this context. And whether there is another context in which the constitutional fact doctrine provides an important backstop to First Amendment rights, in this context, this Court already reviews de novo the sufficiency of the evidence to make a determination whether— Could a district court look at the statement in the indictment that is alleged to be the threat and a motion to dismiss, motion to dismiss, motion to dismiss indictment, that threat under no circumstances could be considered a threat. It would have to be a mere, you know, under Brandenburg protected. Could a district court then dismiss the indictment or not at that point? I think in the vast majority of cases, it probably would not be able to because the question of whether something is a threat is so fact-bound, it requires a jury determination. But I can't exclude the possibility that so much information about the threat might be put into an indictment to enable the defendant to make a motion to dismiss. But that's exactly the point. Whether a particular speech is itself a threat, that is outside the protections of the First Amendment, requires a consideration of whether an ordinary or reasonable person would have understood it to be a serious expression of an intent to injure. And that, as this Court has repeatedly held in previous cases, is a question that's ordinarily one that we give to juries to decide. And as this Court has already pointed out in the previous argument, in this case, the jury made such a careful decision, it carefully evaluated four charged threats, found that three were not true threats, and in this case found that this one, the 88-second video, was in fact a true threat to injure. You would agree that some of the language in that particular video was incitement? I certainly agree that some of the language that he used was exhortative. Yes, Your Honor. When I read it, it seemed like there was a combination of the two. Which is, I mean, it doesn't matter from your perspective. The jury could, if there was sufficient evidence, there was sufficient evidence for that, to find a threat, notwithstanding that it had other consequences. That's correct, Your Honor. I think, and that goes to the point that we made in our brief, is that the First Amendment doesn't define constitutionally distinct silos of speech, where you have to first sort them into one or the other. As this Court made clear in Turner, and in fact the Tenth Circuit, relying on Turner, found in the United States against Wheeler, which is a 2015 case that we cite in our brief at page 24 in footnote 4, one of the points the Tenth Circuit found is there aren't these doctrinally distinct silos. Speech can cross multiple boundaries, but the question on appeal from a jury verdict, convicting a defendant and making a threat, is whether the jury's decision that that was a true threat, whether it was supported by the evidence, whether it was sufficient, whether the evidence was sufficient to allow the jury to reach that conclusion. And so in this case, Your Honor, I don't think that this Court needs to do something that it has never done before, and make its own independent judgment based on its own review of a cold record, which would fundamentally assert the jury's role in this case in making that judgment. So what's your response to the defendant's argument that a threat has to be intended to be communicated to the recipient of a threat? So first, I would say that just doesn't state the law correctly. And if I can use a hypothetical, if a defendant had made a threat to murder a member of Congress at a particular event and communicated that threat specifically to law enforcement with the intent to have the event canceled, even though he hadn't directed it to the member of Congress, but had directed it to law enforcement, I think we would all agree that that satisfies the intent to impair or impede element of the statute, regardless whether he had actually directed it to the member of Congress in a way that would have been received specifically by that member of Congress. So I think the first response is just simply, whether you review it under Plain Air, whether you review it de novo, that misstates the law. That isn't required. You don't need to direct it specifically to be received by the member of Congress. But as we note in our brief, the way that this argument developed, the defendant abandoned this argument through multiple rounds of jury instructions. It was initially, the dispositive instruction the defendant requested was initially made in the first request, but not later renewed. And not renewed after the district court had distributed multiple draft versions of the jury instructions. And even when we were at the charge conference and going through the proposed charge page by page, did not note an objection when the district court proposed to give the relevant instruction. But they cite portions of the charge conference where the district court noted their position on that. And their argument is, the district court clearly knew from what had gone on during the trial what our position was, and we didn't have to formally object. The district court in the charge conference said, I understand the defense thinks the law is X. So isn't that enough? I believe, so I think it's important to distinguish different types of intent arguments that were raised in this case. So one of the threads that ran throughout the entire case, and was something the defense was arguing, even after the jury instructions were given, is whether or not the true threat element included a subjective intent requirement. And that was a discussion and an argument that we had throughout the entire trial. And they talked about that in the context of citing aloneness, for example. That isn't an issue that's on appeal here, but that was the intent issue that they were most focused on during the trial itself. And so I don't understand what the district court was referring there to be a reference to this specific argument, which they never advanced again. Indeed, they requested in another part of the charge conference The district court said, I don't think there's any case law that says the threat has to reach the target. I believe, Your Honor, that relates to a different instruction, which is the instruction the government had requested that the jury be instructed that the government does not have to prove in the context next to the relevant instruction that the threat actually be received by the subject. But I think it's additional. I want to ask you one question about the exclusion of the family member from the courtroom. I understand the government's argument that there wasn't a formal objection to that. And I certainly understand what the challenging circumstances were during this period of time. But if it's one person, the family member wants to be in the courtroom, shouldn't every effort be made to whatever spacing was required at the time? And I think the judge referenced there were already over 25 people just from the participants. And I know the jurors were being put in the gallery to somehow make room so that at least one family member could be there to support the defendant during the trial. It seems to me that that is important enough of a right to access to the courtroom itself as opposed to some live stream in another courtroom. What's your response to that? Well, and I think, Your Honor, the context is necessary. Obviously, the court is aware that the COVID-19 pandemic imposed an incredible burden on the courts that was logistical not merely in getting people into the building but also to find places for people to be in the courtroom itself. But this was no extra burden. I actually disagree, Your Honor. And I think that's in part because of the way that the courtroom was set up. There wasn't a good place for a spectator to sit that was not immediately adjacent to a member of the jury. And that's just because the entire gallery was filled by the jury in this case because there was enough room for each member of the jury to be separated by at least three feet from each other member of the jury. The rest of the courtroom, the well of the courtroom, was filled by the participants in the case. There wasn't a seat that was sufficiently distant. Why can't you leave one row behind the defendant? One row. We're not putting any jurors in that row. We have that row being for the defendant. Similarly could have the row on the other side if there was a victim's family member who needed to be there. We have one spot for the government to have a victim's representative and one for the defendant to have somebody in the courtroom. I don't disagree that- What's so difficult about that, even under the challenging circumstances? I don't disagree that if this had been made before the trial had already started, there might have been a way to find a place to put a spectator in the courtroom. But when Judge Chen was presented with this argument, the trial was already ongoing. We had already placed everyone in the courtroom. We had already introduced all the participants in the trial. And everyone had already been told the public was viewing the trial from the adjoining courtrooms with the live video and audio feed. In that circumstance, I think it was difficult for the judge to find a way to accommodate that request, particularly given the judge noted that there were already overcapacity in the courtroom and adding any additional person to the courtroom would further increase the risk from being overcapacity. So how many people were on your team? Your Honor, I believe we included a list in our brief. The total that were present in the courtroom, I believe, was an average of 36 on any given day. There were three prosecutors. There was an agent at the table and a paralegal. There may also have been an intern at one point during the trial. So an intern, it's more point of an intern during the trial than it is for the defendant to have a family member? Yeah, and the defendant also, I believe, had an intern that attended the trial and they believe was relevant to their preparations. I recall reading that there was some statement made by the court about this when it occurred to the jury to try and mitigate against the fact that there wasn't someone there to support the defendant. That's right, Your Honor. When this was first presented by the defendant's father, conveyed to the court through defense counsel, the judge specifically asked the defendant whether or not there was some statement that they would like the court to make under the sort of extenuating circumstances of the pandemic to note that the family couldn't be present in the courtroom. And together with the defendant, the judge crafted a statement. But you would agree that it's more than just the perception of the jury. The ability of a family member to be in the courtroom to morally support the person, to see the entire trial with their loved one, is more than just what the jury might think, right? I understand, Your Honor, and I agree with that. I think that under these circumstances and on these facts and this record, the district court made the findings that she needed to make and dealt with the situation the best way that she could. And while it's an imperfect outcome, a lot of litigating and trying cases, this is one of the first COVID-19 trials in the Brooklyn courthouse, was imperfect. And so I agree with the court that that is an important consideration. I just think that in this case, the district judge did the best she could. All right. Thank you. Mr. Wade, you have two minutes and rebuttal. Yes, Your Honor. Excluding a father from his only son's trial violated the defendant's right to public trial in the Sixth Amendment. This is planar, right? We disagree, Your Honor. I mean, it would be planar, but I don't think it's planar. The judge was fully apprised of this request. I thought it was clear that it was just being communicated to the court through counsel, but it was clear that it was a request from the father and not an objection or even a request, I think, from the defendant himself. Technically, yes, Your Honor, I understand that. But nonetheless, the request cited applicable to law, the Sixth Amendment public trial, and the request, which is the father's presence in the courtroom. And so sort of the purposes of the appellate preservation- No, no, no, not really, because if you had a formal objection, the court, some of the things the government talked about could have assessed the courtroom, and maybe defense counsel could have proposed moving people around, or I don't know. There would have been a lot of different ways to approach it if there had been a formal objection and a discussion. The court also has a, I mean, once the court is apprised of this Sixth Amendment problem, the court, the district court has a duty to consider, you know, accommodation. I know, but our problem is we don't know all the facts and circumstances in the courtroom in terms of how people were seated. It would be three feet apart, six feet apart. Was there an area where you could have put the loved one? An objection would have allowed us to have a much more fulsome record of those types of issues. I agree, Your Honor. But, you know, I think one of the things that the prosecutor said is that, you know, it's not- So this idea that there was a limit of 25 by the epidemiologist, I think limit is the wrong word here. It's a suggestion, because obviously we were at 36 on- and the other key term here is on average. So sometimes they exceeded 36, right? And so surely, again, I think I share Your Honor's views. I mean, it's one person in a giant space. You could fit one person. I know, but if the situation was that there were so many jurors spaced that all the jurors were taking the entire gallery, for them to be properly spaced within the jury box and in the entire gallery, there was not a- you know, there was no bench to put even one more person on to have all the jurors properly spaced. That would be a problem, right? But we don't know if that was the situation or not. A lot of facts are missing, but we all know that it's- as this court has said, it's not difficult to accommodate one- a single person. I understand that. As opposed- you know, regarding the point about the fact that the jury acquitted on three of the four, you know, I mean, that to us is- that means that the government overcharged this case and that those three should never have gone to the jury. And, you know, three- Well, that does indicate that the jury wasn't reacting against the defendant, notwithstanding the fact that his family was there. Well, we don't know what may- well, maybe if the family was there, they would have acquitted on all four. But, you know, three of four is great for, you know, abetting habits, but it's not great for a felony conviction. Yeah, all right. So, and the final point I would ask- You get some points. You get some points or your side gets some points for three victories. Yes. So the final point I would ask the court's indulgence is to consider holding this case pending the Supreme Court's decision in Counterman v. Colorado, which raises this exact issue of whether the true threat has both a sort of an objective and a subjective component. I know that we didn't make this argument directly on appeal, but as the discussion, I think, indicates, all of these issues, including the statutory issue, are kind of intertwined. And because we don't know how the Supreme Court's going to come out on Counterman and its reasoning in Counterman- It's- Counterman, as I recall, has been argued. It was argued Wednesday. So, and obviously the court will decide it by the end of June. So it would only be two months. And so if the court considered holding any decision in this case and then allow- and possibly allow supplement- But that was before that court, whether a court should make some independent assessment of the sufficiency, right? No, again, it's just- yes, because, again, there's no dispute in that case that that is a threat because the defendant there directly communicated with the victim. How is that going to help your situation? How is a decision in that case going to help your situation one way or the other? My point is that we don't know exactly what the outcome would be. But the court- the question presented is whether the defendant must, in addition, must intend it to be a serious threat. And, again, I don't know how the court- Well, here the court- the defendant was instructed that it had- he had it intended, right? No. Because this court- no, this court- this court, in Turner, rejected the reading of true threat that Counterman is asking the Supreme Court to make. All right. Which is that both has a reasonable- this court uses solely a reasonable person perspective to determine the trueness of a threat. And Counterman raises the argument that you must also- the government must also show the defendant subjectively intended the statement to be threatening. All right. Let me just ask Mr. Richardson- thank you, Mr. Lee- I just want you, on this issue, whether you should hold the case or not, what's the government's view? Your Honor, I believe that the issue that's before Counterman is an issue that the defendant has not raised before this court on appeal and challenging the jury instructions. It's not one- it was one that was litigated to some extent in the district court, but it's not one that the defendant has actually raised on appeal. We haven't had an opportunity to brief it before this court. And it was one resolved by this court in Turner. So obviously we'll find out what the Supreme Court says in Counterman, but I- he's- the defendant in this case has waived this issue by not raising it on appeal. All right. Thank you. Thank you both. Thank you both. Have a good day.